UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN DREW,

    Plaintiff,

v.                                                    Case No. 10-14437

TRACI KEMP-BROOKS,            HONORABLE AVERN COHN
et al,

    Defendants.
_____/

**<u>MEMORANDUM AND ORDER GRANTING DEFENDANTS' DISPOSITIVE MOTIONS
(Docs. 25, 26, 27, 28)
AND
DISMISSING CASE</u>**[1]

I.

This is a mortgage case. Plaintiff Kevin Drew, proceeding pro se, has sued several defendants claiming defects in the loan process by which he obtained his mortgage and in the subsequent foreclosure proceedings. The named defendants are: Traci Kemp-Brooks, Wayne County Sheriff Department, Ralph Leggat, Samuel George, Daniel Pfannes, Benny Napoleon, Chase Home Finance LLC, JPMC Specialty Mortgage LLC, Mortgage Electronic Registration Systems, Inc, WM Specialty Mortgage, LLC, and Federal National Mortgage Association.

Before the Court are dispositive motions filed by all of the defendants, as follows:

-     Motion for Judgment on the Pleadings or Summary Judgment by Chase Home Finance LLC, JPMC Specialty Mortgage LLC, Mortgage Electronic Registration Systems, Inc, WM Specialty Mortgage, LLC (Doc. 25) (the

---

    [1]The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

    Bank Defendants)

- Motion for Summary Judgment by Federal National Mortgage Association (Doc. 26)

- Motion for Summary Judgment by Samuel George, Ralph Leggat, Benny Napoleon, Daniel Pfannes, Wayne County Sheriff Department (Doc. 27) (the Wayne County Defendants)

- Motion for Summary Judgment/Dismissal by Traci Kemp-Brooks (Doc. 28)

For the reasons that follow, the motions will be granted and the case will be dismissed.

## II.  Background

### A.  The Mortgage and Foreclosure Process

On August 2, 2005, Plaintiff and non-party Helen D. Drew borrowed $255,600 from Argent Mortgage Company LLC (Argent) to purchase property located at 23890 Stacey Drive, Brownstown, Michigan (the Property).  Plaintiff's promise to repay the amount of the Loan is evidenced by a note, which is secured by a mortgage to Argent on the Property.

On August 18, 2006, Argent assigned its mortgage interest in the Property to JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC.  On December 15, 2008, Citi Residential Lending Inc., as attorney in fact for Argent, assigned its mortgage interest in the Property to Mortgage Electronic Registration Systems, as nominee for JPMorgan Chase Bank, N.A. (MERS).  On May 21, 2009, MERS assigned its mortgage interest in the Property to JPMC Specialty.  Thus, although Argent appears to have assigned its interest in the mortgage twice, the end result is the same:  JPMC Specialty is the record assignee of the mortgage.

Plaintiff defaulted on his obligations under the note and mortgage by failing to make the required payments. Foreclosure proceedings were commenced. On May 5, 2010, a sheriff's sale of the Property was held and JPMC Specialty purchased the Property at the sale.

On May 14, 2010, a Sheriff's deed evidencing the sale was executed by Special Deputy Sheriff Ralph Leggat. As stated in the Sheriff's deed, Plaintiff's statutory right to redeem expired on November 5, 2010. Plaintiff did not redeem the Property.

### B. The Complaint

On November 5, 2010, more than five years after the closing on the loan, and on the day the redemption period expired, Plaintiff filed a complaint against defendants in Wayne County Circuit Court. The complaint alleges a host of improprieties concerning the closing on the loan and the subsequent foreclosure due to Plaintiff's default. First, Plaintiff contends that the Sheriff's sale was invalid because the chain of title was broken, the sale adjournments were improper, there was no affidavit of posting attached to the Sheriff's deed, and the Sheriff did not have authority to conduct the sale. The allegations surrounding the foreclosure process are directed at Kemp-Brooks, the Bank Defendants, and the Wayne County Defendants.

Second, Plaintiff contends that the Bank Defendants violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq. because he was not provided with a "Notice of Right to Cancel" or a copy of his mortgage documents three days before the closing.

Third, Plaintiff claims that the Bank Defendants violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, et seq. because he purportedly

sent four QWRs to "Chase", but that "Chase" only responded to one of the four letters.

Fourth, Plaintiff claims that the Bank Defendants violated the Fair Debt Collection Practice Act (FDCPA), 15 U.S.C. § 1692, et seq., by "conspir[ing] and manipulat[ing] the Fair Debt Collection Practice Act in breach of Mortgages sections 18 and 22." He further contends that FDCPA was violated because the "30 day Sheriff sale letter was not mailed to Plaintiff."

Finally, Plaintiff asserts state tort claims and a due process violation under 42 U.S.C. § 1983 against the Wayne County Defendants.

As relief, Plaintiff seeks damages, rescission, satisfaction of the mortgage, and punitive damages in the amount of $750,000.

### III. Legal Standards

The motions have been brought under Fed. R. Civ. P. 12(c), Fed. R. Civ. P. 12(b)(6), and Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(c) provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) where the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. Beal v. Missouri Pacific R.R., 312 U.S. 45 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368, p. 518.

The Court of Appeals for the Sixth Circuit has stated that a district court must consider a motion under Rule 12(c) using the same standard of review as a Rule 12(b)(6) motion. Roger Miller Music, Inc. v. Sony/ATV Publ'g, L.L.C, 477 F.3d 383, 389 (6th Cir. 2007). In facing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "[t]he court must construe the complaint in the light most favorable to

the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional Rule 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp., 127 S.Ct. at 1965 (citations omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). Here, the Court has considered documents relating to the mortgage and note that are referenced in the complaint and central to Plaintiff's claims.

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

### IV. Analysis

**A. Federal National Mortgage Association's Motion for Summary Judgment**

Federal National Mortgage Association ("Fannie Mae") moves for dismissal or summary judgment on the grounds that the complaint does not make any allegations against it. The Court agrees. The complaint contains no allegations regarding violations of wrongdoing by Fannie Mae. Indeed, Fannie Mae is not mentioned at all other than appearing in the case caption. Although the loan was insured by Fannie Mae, Fannie Mae was not involved in the lending or foreclosure process and, as explained in its papers, has no interest in the loan. The complaint does not allege otherwise. Fannie Mae is entitled to dismissal because the complaint fails to state any discernable or viable claim against it.

### B. Traci Kemp-Brooks' Motion to Dismiss or for Summary Judgment

Traci Kemp-Brooks is an attorney with Trott & Trott, P.C., the law firm who handled the foreclosure on the Property. She is named in the complaint relative to Plaintiff's claim that the Sheriff's deed contains fraudulent misrepresentations and that Kemp-Brooks either prepared it or had knowledge of the misrepresentations.

Plaintiff has not stated a viable claim against Kemp-Brooks. An attorney owes no duty of care to an adversary. See Mercer v. Jaffe, Snider, Raitt & Heuer, P.C., 713 F. Supp. 1019, 1029 (W.D. Mich. 1989) (citing Friedman v. Dozorc, 412 Mich. 1 (1981)). As such, Plaintiff's claim against Kemp-Brooks must be dismissed.

### C. The Bank Defendants' Motion for Judgment on the Pleadings or for Summary Judgment

The Bank Defendants argue that the complaint should be dismissed for several reasons. Each will be addressed in turn.

#### 1. Standing

The Bank Defendants first contend that Plaintiff lacks standing and no longer has an interest in the Property to be able to challenge the foreclosure proceedings, including the Sheriff's sale.[2] The Court agrees.

To establish standing, Plaintiff must "show that he had suffered an actual or imminent, concrete and particularized injury as a result of defendant's [actions], which injury likely would be redressed by a favorable decision." Am. Family Ass'n of Michigan v. Michigan State Univ. Bd. of Trs., 276 Mich. App. 42, 44 (2007).

---

[2]The Bank Defendants also argue that Plaintiff's claims are barred by laches. The Court declines to address this argument, however well-taken it may be.

Following foreclosure, the rights and obligations of the parties are governed by statute. Senters v. Ottawa Sav. Bank, FSB, 443 Mich. 45, 50-53 (1993). Upon expiration of the statutory redemption period, the purchaser of a Sheriff's deed is vested with "all the right, title, and interest" in the property. See M.C.L. § 600.3236; Piotrowski v State Land Office Bd., 302 Mich. 179, 187 (1942). Here, JPMC Specialty purchased the property at a foreclosure sale on May 5, 2010. When Plaintiff failed to redeem the property before the redemption period expired on November 5, 2010, JPMC Specialty became vested with "all the right, title, and interest" in the property by operation of law. While Plaintiff filed this action on the day the redemption period expired, the filing of this lawsuit did not toll the redemption period. Overton v. Mortgage Electronic Registration Sys., No. 284950, 2009 WL 1507342 at * 1 (Mich. Ct. App. May 28, 2009).

### 2. Claims Related to the Foreclosure

The Bank Defendants also argue that even if Plaintiff had standing, all of his claims related to alleged defects in the foreclosure fail because JPMC Specialty properly foreclosed on the Property. "The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." Sweet Air Inv., Inc. v. Kenney, 275 Mich. App. 492, 497 (2007) (quoting U.S. v. Garno, 974 F. Supp. 628, 633 (E.D. Mich. 1997)). Here, Plaintiff fails to plead a single fact in support of the "strong case of fraud" required to set aside the foreclosure sale. In fact, the record shows that JPMC Specialty complied with the Michigan foreclosure by advertisement statute.

Plaintiff's conclusory allegations regarding the foreclosure sale, specifically that the foreclosure sale of the Property was invalid because the chain of title was broken,

the sale adjournments were improper and the affidavit of posting was missing, and the sheriff did not have authority to conduct the sale, are without merit. Each allegation is addressed in turn.

First, there was no break in the chain of title. As set forth above, on August 2, 2005, Plaintiff and non-party Helen Drew took out a loan from Argent. As security for the loan, Plaintiff and Helen Drew granted Argent a mortgage on the Property. On August 18, 2006, Argent assigned the Mortgage to JPMC Specialty f/k/a WM Specialty Mortgage LLC. Although Argent subsequently assigned its interest in the Property to MERS, as beneficiary, MERS assigned its interest to JPMC Specialty. This, however, did not cause a break in the chain of title. Under either scenario, JPMC Specialty remained the record assignee of the Mortgage. As the assignee of the Mortgage, JPMC Specialty was the only entity that had the right to foreclose by advertisement.

Even assuming that Plaintiff's allegation that the assignments caused a break in the chain of title is true, he cannot challenge the validity of the assignments to which he was not a party because he has not alleged any prejudice. See, e.g., Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, 717 F. Supp. 2d 724, 735 (E.D. Mich. 2010) ("Lender has established a record chain of title from the original mortgagor…to Lender…which substantially complies with the foreclosure by advertisement statute, [and] establishes Lender as the only entity with a right to foreclose by advertisement"). Accordingly, JPMC Specialty was entitled to foreclose.

Plaintiff also alleges that the Sheriff's sale was improper because JPMC Specialty adjourned the foreclosure sale from week to week. Plaintiff is mistaken. JPMC Specialty properly adjourned the foreclosure sale from week to week from June

25, 2009, the original sale date, to May 5, 2010, the actual sale date.  M.C.L. § 600.3220, which governs foreclosure sale adjournments, provides in relevant part:

> Such sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published….

Here, as required by the statute, the foreclosure sale was adjourned from week to week by "publicly posting a Notice of Adjournment" in "the Circuit Courthouse lobby", which was.  Contrary to Plaintiff's assertion, JPMC Specialty was not required to "republish notice of sheriff sale that was adjourned more than one week." Rather, JPMC Specialty only had to post the notice of adjournment at the time of and at the place where the sale was to take place.  Worthy v. World Wide Financial Servs., Inc., 347 F. Supp. 2d 502, 511 (E.D. Mich. 2004) ("Under the law, a party who publishes an initial notice of adjournment may continue to adjourn a foreclosure sale from week to week without having to republish a notice of the adjournment every week").

Even assuming the foreclosure sale adjournments were defective, invalidation of the sale is not warranted because Plaintiff fails to allege any prejudice from the alleged defects.  See Jackson Inv. Corp. v. Pittsfield Prods., Inc., 162 Mich. App. 750, 755-57 (1987).

Finally, Plaintiff's allegation that there was no affidavit of posting attached to the Sheriff's deed is not true.  The affidavit of posting was properly attached to page 4 of the Sheriff's deed, which states that Ken Bosley posted notice of the foreclosure in a conspicuous place on the Property on May 29, 2009.

Plaintiff further asserts that the Sheriff's deed is defective because: (1) Special Deputy Sheriff Ralph Leggat could not conduct the sale because he was appointed by the undersheriff rather than the sheriff; and (2) Leggat did not have the authority to conduct the Sheriff's Sale because he was appointed a "Special Deputy Sheriff" instead of a "Deputy Sheriff."  Plaintiff's arguments lack merit.  First, Leggat was appointed as a "Special Deputy Sheriff" by Benny N. Napoleon, Wayne County Sheriff.  The Appointment was signed on September 30, 2009, and the term of the Appointment ends on December 31, 2010.  Id.  The Appointment explicitly outlines the acts that Sheriff Leggat may perform, which includes "[t]o act as auctioneer to hold all sheriff's sales, issue deeds; adjourn sheriff's sales and perform related work...." Id.

The Sheriff's sale was conducted by Leggat on May 5, 2010, during the Special Deputy Sheriff Term outlined in the Appointment.  As a properly deputized special deputy, he was authorized to conduct the sale on the Property.  Michigan law allows for the creation of special deputies who may be deputized for the purposes of performing particular acts.  M.C.L. § 51.70 provides that "[p]ersons may also be deputed by a sheriff, by an instrument in writing, to do particular acts, who shall be known as special deputies . . . ."  M.C.L. § 51.70.  In other words, M.C.L. § 51.70 specifically allows a sheriff to appoint special deputies to perform any particular acts that the Sheriff himself is authorized by law to perform.  See Tower v. Welker, 93 Mich. 332, 335 (1892) (finding that Michigan law allows sheriffs to appoint deputies and undersheriffs who, once appointed, have all of the ministerial powers of a sheriff: "In general, all ministerial duties which the principal himself has a right to perform may be discharged by a deputy.").  Moreover, the Michigan Court of Appeals has recently held that a special

11

deputy appointed under M.C.L. § 51.70, such as Leggat, can perform foreclosure sales. Kubicki v. Mortgage Electronic Registration Sys., ___ Mich. App. ___, 2011 WL 668118 (Mich. Ct. App. Feb. 22, 2011). See also English v. Flagstar Bank, No. 09-11705, 2009 WL 4730450, at *2 (E.D. Mich. Dec. 9, 2009) (holding special deputy's appointment by undersheriff valid). As such, Plaintiff's claim that the sale was invalid because of Legatt's role fails to state a claim.

### 3. TILA Claims

Plaintiff also claims that the Bank Defendants violated TILA. The Bank Defendants say that Plaintiff's TILA claims are time-barred under TILA's one-year statute of limitations and three year statute of repose. The Court agrees.

Under TILA, claims for damages are subject to a one-year limitation period. 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."); United States v. Petroff-Kline, 557 F.3d 285, 296 (6th Cir. 2009). Claims for the rescission of a mortgage under TILA are barred by the three-year period of repose applicable to the right to rescind. 15 U.S.C. § 1635(f) (the right to rescind expires three years after the date of the transaction); Sobh v. Chase Home Finance, LLC, No. 2:09-cv-11986 (E.D. Mich. July 28, 2009) (dismissing TILA claim as barred by the 3 year statute of repose).

Here, Plaintiff's TILA claims are based upon the loan origination that occurred on August 2, 2005. Therefore, Plaintiff's TILA claims, which were asserted for the first time on November 5, 2010, more than five years after the origination of the Mortgage, are time-barred by both the statute of limitations and statute of repose.

### 4. RESPA Claim

The Bank Defendants contend that Plaintiff's claim under RESPA fail. Plaintiff claims that the Bank Defendants violated RESPA because he sent letters to Chase and Chase failed to respond to those requests. RESPA provides that a borrower may submit a "Qualified Written Request" (QWR) to its loan servicer for "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). To be considered a QWR, the letter must identify the loan and "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). RESPA requires that a servicer acknowledge such an inquiry within 20 business days of receiving the request (12 U.S.C. § 2605(e)(1)(A)), and substantively respond within 60 business days, by either (a) correcting the account, providing a written response explaining why the account is correct and providing contact information for further assistance; or (b) providing a written response with the information requested or an explanation for why the information is unavailable or cannot be obtained and providing contact information for further assistance. 12 U.S.C. § 2605(e)(2).

In his Complaint, Plaintiff alleges to have sent the following letters to "Chase":

• April 5, 2010 – RESPA Request (Comp. ¶ 30 and Ex. I to Comp.)

• May 25, 2010 – Notice (Comp. ¶ 31 and Ex. K to Comp.)[3]

---

[3]As the Bank Defendants point out, even if Plaintiff's May 25, 2010 letter were a QWR, Chase sent two responses to Plaintiff – a June 17, 2010 initial response and an August 26, 2010 response enclosing a copy of the note, security instrument, and payment history, and providing Plaintiff with contact information for further assistance, which complied with RESPA. 12 U.S.C. § 2605(e)(1)(A); 12 U.S.C. § 2605(e)(2).

- June 11, 2010 – RESPA QWR Complaint, Dispute of Debt, & Validation of Debt Letter, TILA Request (Comp. ¶ 32 and Ex. L to Comp.)

- August 2, 2010 – Notice for Full Disclosure (Comp. ¶ 33 and Ex. M to Comp.)

None of these letters, which are attached to the Complaint, constitute QWRs as defined by RESPA because they do not relate to the servicing of Plaintiff's Loan (i.e. "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."). See 12 U.S.C. § 2605(i)(3).

Moreover, none of the letters identify any reasons for a belief that the account servicing is in error. Instead, Plaintiff merely makes vague accusations such as "your company has been accused of predatory servicing or lending and servicing schemes", "I was induced to sign the note agreeing to the terms…when as yet I had received nothing from the bank", "[d]ue to your total repudiation and dishonor, you have now agreed to the default provisions herein", and "I have reason to believe that …servicing errors have occurred" without identifying the alleged errors. Because the letters do not relate to the right to receive payments and/or make payments pursuant to the mortgage and/or note, they are not proper QWR requests under RESPA and no response was required.

Additionally, Plaintiff has not alleged that he sustained actual damages as a result of any failure to respond. RESPA provides that if a servicer fails to respond to a proper QWR, the servicer can be held liable for "actual damages to the

borrower as a result of the failure . . ." as well as additional damages, not to exceed $1,000, in the case of a pattern and practice of noncompliance.  12 U.S.C. § 2605(f)(1). A claim for relief based upon a purported failure to respond to a QWR must be dismissed when the plaintiff fails to show damages resulting from the purported failure to respond.  See Battah v. Resmae Mortgage Corp., _ F. Supp. 2d _, 2010 WL 4260530, at * 6 (E.D. Mich. Oct. 28, 2010) ("To successfully plead a RESPA claim, Plaintiff must allege actual damages, which resulted from . . . [a] failure to respond to Plaintiff's QWRs . .. . The complete absence of alleged damages warrants a dismissal of Plaintiff's RESPA claim."); Jarbo v. BAC Home Loan Servicing, No. 10-12632, 2010 WL 5173825, at *5 (E.D. Mich. Dec. 15, 2010) ("To the extent Plaintiffs allege that Defendants failed to respond to a Qualified Written Request ("QWR") under RESPA, Plaintiffs fail to state a claim upon which relief can be granted because they allege no facts showing that damages occurred as a result of that failure.")

      Here, even if Plaintiff's letters were QWRs and Chase failed to respond to them, Plaintiff does not allege that he sustained any actual damages as a result of the alleged failure.  Plaintiff's bare allegation that Chase did not respond, without any factual support or allegations of damages, is not sufficient to state a RESPA claim.  As such, this claim must be dismissed.

### 5.  FDCPA Claim

      Finally, the Bank Defendants contend that Plaintiff's claim under the FDCPA fail because the purported FDCPA claim is a single conclusory allegation with no factual

support.[4]  It is well-established that a claimant must "allege a factual predicate concrete enough to warrant further proceedings . . . ." Found. For Interior Design Educ. Res. v. Savannah College of Art & Design, 244 F.3d 521, 530 (6th Cir. 2001).  "A properly pleaded complaint requires "more than an unadorned, the- defendant -unlawfully -harmed - me accusation." Iqbal, 129 S.Ct. at 1949.

Here, in support of his FDCPA claim against the Bank Defendants, Plaintiff alleges only that "'Defendants Two' conspired and manipulated the Fair Debt Collection Practice act in breach of Mortgage sections 18 and 22.  Acceleration of the mortgage was not noticed. The 30 day Sheriff sale letter was not mailed to the Plaintiff." (Comp. ¶ 28.).  This single, unsupported statement fails to identify which defendant is allegedly responsible for any of the alleged FDCPA violations; how the alleged conduct violates the FDCPA; or even what provision of the FDCPA the Bank Defendants allegedly violated.  This fails to state a plausible claim for relief.  As such, Plaintiff's FDCPA claim must be dismissed.

Overall, Plaintiff has not made out any viable claims against the Bank

---

[4]The Bank Defendants also argue that any FDCPA claim against JPMC Specialty or Chase Home Finance LLC (CHF) in connection with any collection activities under the note also fails because the FDCPA only creates liability for debt collectors.  This argument is well-taken.  A debt collector is a person who collects debts "owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  "[C]reditors are not subject to the FDCPA when collecting their accounts.'" Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2003) (citations omitted).  Attempts by JPMC Specialty or CHF to collect the Loan debt from Plaintiff were for their own account, making them exempt from FDCPA liability. Moreover, Plaintiff does not allege that JPMC Specialty or CHF made any attempt to collect a debt other than the obligations that were owed to them, which does not implicate the FDCPA.  See, e.g., Romberger v. Wells Fargo Bank, No. 07-13210, 2008 WL 3838026, at *4 (E.D. Mich. Aug. 14, 2008).

16

Defendants.

### D. The Wayne County Defendants' Motion to Dismiss or for Summary Judgment

Similar to the claims made against the Bank Defendants, Plaintiff alleges that the Wayne County Defendants are liable because the foreclosure proceedings were invalid. Plaintiff also claims under § 1983 that the Wayne County Defendants violated his due process rights. Finally, he asserts various state tort claims, including negligence, misrepresentation, slander of title, conversion, intentional infliction of emotional distress, and gross negligence. The Wayne County Defendants argue that none of these claims are viable. The Court agrees.

#### 1. Claims Related to the Foreclosure

As explained in detail above, see section IV. C. 2., supra, Plaintiff's allegations of defects in the foreclosure proceedings, particularly related to the notice of adjournments of the sale and Leggat's ability to conduct the sale, all fail to state a claim. The foreclosure proceedings were conducted in accordance with Michigan law. Plaintiff's claims against the Wayne County Defendants must be dismissed.

#### 2. Tort and § 1983 Claims

As to Plaintiff's tort claims, they are barred against Wayne County because of governmental immunity. See HRRS Inc. v. Wayne County Treasurer, 279 F. Supp. 2d 846, 851 (E.D. Mich. 2003). Plaintiff's claims against the individual defendants likewise fail because all of the claims are premised on Plaintiff's belief that Leggat sold his property without legal authority. Because that allegation is false as a matter of law, Plaintiff has not stated any viable tort claims against the individual defendants.

Finally, Plaintiff's due process claim arising out of the foreclosure also fails. The Sixth Circuit has held that a sheriff's participation in Michigan's foreclosure by advertisement statute is not "state action." As such, Plaintiff cannot make out a claim under § 1983. Northrip v. Federal Nat'l Mortgage Ass'n., 527 F.2d 23, 28-29 (6th Cir. 1975). See also Ray v. Oakland Cnty. Drain Comm'n, 115 F. App'x 775, 777 (6th Cir.2004); Williams v. Wayne County, No. 09–14328, 2011 WL 479959, at *3–5 (E.D. Mich. Feb.4, 2011).

Overall, Plaintiff's claims against the Wayne County Defendants must be dismissed.

## V. Conclusion

For the reasons stated above, defendants' motions are GRANTED. This case is DISMISSED.

SO ORDERED.


Dated: July 21, 2011        S/Avern Cohn
                            AVERN COHN
                            UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Kevin Drew, 23890 Stacey Drive, Brownstown, MI 48183 and the attorneys of record on this date, July 21, 2011, by electronic and/or ordinary mail.

                            S/Julie Owens
                            Case Manager, (313) 234-5160